NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| THOMAS MCGOWAN, | : | Hon. Jerome B. Simandle |
| Petitioner, | : | Civil Action No. 11-4696 (JBS) |
| v. | : |  |
| DONNA ZICKEFOOSE, | : | **O P I N I O N** |
| Respondent. | : |  |

**Simandle**, District Judge:

This matter comes before the Court upon the Clerk's receipt of a transfer order from the United States District Court for the Eastern District of Pennsylvania ("EDPA"). See Docket Entry No. 1. For the reasons detailed below, this Court will retain jurisdiction over this matter pursuant to 28 U.S.C. § 2241, order Petitioner to submit his filing fee or his in forma pauperis application and direct Respondent to show cause as to why habeas relief shall not be granted to Petitioner.

I.      RELEVANT FACTUAL BACKGROUND

In January 2004, Petitioner was arrested on the charges of being a felon in possession of firearm; these charges gave rise to United States v. McGowan ("McGowan-I"), Crim. Action No. 04-0074 (JF) (E.D. Pa.) (opened Jan. 23, 2004, terminated July 27, 2004).[1]  Pursuant to the Government's motion for pretrial detention, Petitioner remained in custody since the date of his

---

[1] Although McGowan-I was later reassigned from Judge John P. Fullam ("Judge Fullam") to Judge Franklin S. Van Antwerpen ("Van Antwerpen"), see McGowan-I, Docket Entry No. 29, Judge Fullam completed McGowan-I (except for the plea proceedings, that were presided by Judge Van Antwerpen, who was elevated to the United Court of Appeals shortly after these plea proceedings). See generally, McGowan-I, docket and Docket Entry No. 29.

arrest on McGowan-I charges.  See McGowan-I, Docket Entries Nos. 6 and 9.  On April 26, 2004, Petitioner accepted a plea offer, see id., Docket Entry No. 26, and was sentenced by Judge Fullam on July 26, 2004.  See id., Docket Entries Nos. 31 and 34.  As a result of his McGowan-I proceedings, Petitioner was ordered to serve 57 months in prison.  See id., Docket Entry No. 32.  Petitioner began serving his McGowan-I sentence at the F.C.I. Schuykill ("FCI Schuykill") located in Minersville, Pennsylvania.

On November 17, 2004, another criminal proceeding commenced.  See USA v. Butler ("McGowan-II"), Crim. Action No. 04-0732-11 (JS) (E.D. Pa.) (opened Nov. 17, 2004, terminated Nov. 15, 2006).  The indictment filed in McGowan-II charged a group of thirteen individuals with various drug-related offenses and named, inter alia, Petitioner as one of the defendants in that action.[2]  See McGowan-II, Docket Entry No. 1.  Petitioner was produced by the FCI Schuykill officials on a writ habeas corpus ad prosequendum for his arraignment in McGowan-II.  See id., Docket Entry No. 45.  Petitioner pled not guilty; no bail was set in light of his incarceration pursuant to the McGowan-I prison term.  See id., Docket Entries Nos. 107 and 115.

In November 2005, Petitioner changed his plea in McGowan-II to guilty, see id., Docket Entries Nos. 188, 195 and 201; that plea was entered after the McGowan-II prosecutors docketed the information about Petitioner's prior conviction (other that his McGowan-I) rendered by the Court of Common Pleas of Lehigh County, Pennsylvania, and – like the McGowan-II proceedings – it was based on drug-related charges.  See id., Docket Entry No. 163.

---

[2] Specifically, the indictment in McGowan-II charged that "[t]he defendants were part of a drug organization known as the 2ND Gang ("2ND").  2ND was a crack cocaine and powder cocaine distribution organization that operated on 2nd Street in the City of Allentown, Pennsylvania between 1998 and 2003.  2ND included more than 10 members who purchased and sold more than $1,000,000 of crack cocaine and powder cocaine."  McGowan-II, Docket Entry No. 1, at 3.

On December 11, 2006, Petitioner was sentenced by Judge Juan P. Sánchez ("Judge Sánchez"), who presided over the McGowan-II proceedings, to 120-month imprisonment. See id., Docket Entry No. 414. The judgment entered by Judge Sánchez had the following entry on the page titled "Additional Imprisonment Terms":

> Under U.S.S.G. § 5G1 .3(c), I have the option of imposing any sentence concurrent, consecutive or partially concurrent with Mr. McGowan's undischarged sentence at docket number 04-74. Because the conduct alleged at docket number 04-74 is part of the 2ND enterprise, I impose the sentence in this case be served concurrently with the sentence at docket number 04-74.

Id. at 3.

After being sentenced by Judge Sánchez, Petitioner was returned to the FCI Schuykill, Pennsylvania to serve his McGowan-I and McGowan-II sentences.

Two and a half years passed by. On April 17, 2009, being still incarcerated at the FCI Schuykill, Petitioner filed a pro se motion in his McGowan-II action; that motion was addressed to Judge Sánchez. See id., Docket Entry No. 396, at 13 (indicating the date of execution and Petitioner's place of confinement). In that pro se motion, Petitioner asserted that the Bureau of Prisons ("BOP") calculated his McGowan-II sentence with a presumption that it was imposed as "prospectively concurrent" to his McGowan-I sentence (i.e., that the BOP presumed that the first day of Petitioner's McGowan-II sentence was the date when Judge Sánchez imposed the McGowan-II sentence and so Petitioner's McGowan-I and McGowan-II sentences began to run concurrently only starting from that date). See id., generally, Docket Entry No. 396. Petitioner, however, asked Judge Sánchez to clarify that Petitioner's McGowan-II sentence was imposed to run "retroactively concurrent" with his McGowan-I sentence (i.e., so the BOP should have calculated the McGowan-II sentence with presumption that the first day of Petitioner's McGowan-II sentence was the date when

3

his McGowan-I sentence began to run). See id. In his pro se motion, Petitioner relied on the interpretation of U.S. Sentencing Guidelines Manual § 5G1.3(c) provided by the Court of Appeals in Ruggiano v. Reish, 307 F.3d 121 (3d Cir. 2002).

On April 27, 2009, the Clerk of the Court for the EDPA docketed Petitioner's certificate of service on the United States Attorney for the Eastern District of Pennsylvania. See id., Docket Entry No. 397. The certificate verified that Petitioner was still housed at the FCI Schuykill. See id.

On May 3, 2011, Judge Sánchez issued an order: (a) directing appointment of a federal public defender to represent Petitioner for the purposes of litigating Petitioner's Ruggiano-based challenges; and (b) ordering that appointed public defender to file an amended motion further developing Petitioner's challenges. See id., Docket Entry No. 404.

On May 15, 2011, Assistant Federal Defender Michael D. Raffaele, Esq. entered his appearance in the McGowan-II proceedings on behalf of Petitioner. See id., Docket Entry No. 406. On July 5, 2011, Mr. Raffaele filed an amended motion on behalf of Petitioner. See id., Docket Entry No. 407 (reflecting that the document filed was an amended motion in the McGowan-II criminal proceedings, with Petitioner being designated as "defendant" and the United States as "plaintiff"). The heading of that amended motion, however, read, "Amended Petition Pursuant to 28 U.S.C. § 2241 For Writ of Habeas Corpus Correcting Sentence Computation," although the substance of this amended document was virtually identical to Petitioner's original pro se motion. See id. Also, on the same day (i.e., on July 5, 2011), Mr. Raffaele filed a motion to transfer Petitioner's Ruggiano-based challenges to the District of New Jersey. See id., Docket Entry Nos. 408, at 2.

In that Transfer Motion, Mr. Raffaele stated, inter alia, as follows:

> [Petitioner,] through [Mr. Raffaele], now moves [Judge Sánchez] to correct its
> want of jurisdiction over this matter by ordering the matter transferred to
> the District of New Jersey. . . . [Judge Sánchez] is without jurisdiction in this
> matter, as habeas corpus petitions filed pursuant to 28 U.S.C. § 2241 generally
> must be filed in the district of confinement. [Since the time of his filing of the
> original pro se motion raising Ruggiano-based challenges, Petitioner has was
> transferred to another federal correctional facility. Therefore, at the time of Mr.
> Raffaele's filing of the amended motion and the Transfer Motion, Petitioner has
> become] confined in the District of New Jersey. [Judge Sánchez] does, however,
> have jurisdiction to correct [his] want of jurisdiction. [Judge Sánchez has only two
> ways to correct such want of jurisdiction over Petitioner's challenges: he] may do
> so by [either] dismissing the matter, or ordering its transfer to the correct
> jurisdiction. Transfer is the correct step in this case.

Id. at 2 and 7; see also id. at 3 (relying on Rumsfeld v. Padilla, 542 U.S. 426 (2004), for the conclusion that there were only "two options available to [Judge Sánchez]: dismiss [Petitioner's application] and require that [Petitioner] start the process of filing his petition over again, or transfer it to the District of New Jersey").

The respondents, being represented by Assistant United States Attorney Sherri A. Stephan, joined in Mr. Raffaele's motion, stating:

> On or about April 20, 2009, [Petitioner] filed a pro se motion requesting
> readjustment of his sentence pursuant to U.S.S.G. 5G1.3. On or about May 3,
> 2011, the Federal Defender Association was appointed to represent [Petitioner]
> and ordered to filed an amended [motion]. On or about July 5, 2011, Assistant
> Federal Defender Michael D. Raffaele filed an amended [motion] on [Petitioner's]
> behalf, reclassifying [Petitioner's pro se] motion as a petition for relief under Title
> 28, United States Code, Section 2241 and at the same time filed a motion pursuant
> to Title 28, United States Code, Section 1631 to transfer jurisdiction of this matter
> to the District of New Jersey where [Petitioner] is currently incarcerated. . . .
> Jurisdiction for a motion under Section 2241 lies in the district in which the
> prisoner or the custodian is located. Interpreting this language, the Supreme
> Court held that "the plain language of the habeas statute thus confirms the general
> rule that for core habeas petitions challenging present physical confinement,
> jurisdiction lies in only one district: the district of confinement." . . . [F]or the
> reasons set forth above, the government concurs in [Mr. Raffaele's] request to
> transfer jurisdiction of his amended petition for relief pursuant to Title 28, United
> States Code, Section 2241 to the District of New Jersey.

5

Id. Docket Entry No. 411, at 1-2.

On July 11, 2011, Judge Sánchez issued an order directing transfer of Petitioner's Ruggiano-based challenges to this District.  See id., Docket Entry No. 412.

The transferred documents were received by the Clerk in the proper vicinage of this District a month and a half later.  Upon such receipt, the instant matter was commenced and assigned to the undersigned on August 24, 2011.  See id., Docket Entry No. 416..[3]

The transferred package included: (a) the amended motion executed by Mr. Raffaele (i.e., the amended motion in which Mr. Raffaele re-qualified Petitioner's original pro se motion into a § 2241 petition); (b) Judge Sánchez's transfer order; (c) the docket sheet in the entire McGowan-II criminal proceedings (as it existed as of the date of Judge Sánchez's transfer order); and (d) a letter from the Clerk of the EDPA forwarding the above-listed three items to this District.

## II.   RELEVANT LEGAL BACKGROUND

### A.   Substantive Test Governing Petitioner's Claims

As noted at the outset of this Opinion, Petitioner raised challenges based on the holding of Ruggiano v. Reish.  In Ruggiano, the Court of Appeals explained that the sentencing court's authority under § 5G1.3(c) to "adjust" a sentence is distinct from the BOP's authority under 18 U.S.C. § 3585(b) to "credit" a sentence, even though the benefit to the defendant may be the

---

[3] The transferred matter received by the Clerk was the *criminal proceeding* in McGowan-II, captioned as United States v. McGowan, Crim. No. 04-732-11 (E.D. Pa.).  However, upon studying the documents received from the EDPA, the Clerk of the Court for the District of New Jersey correctly changed the nature of this action from "criminal" to "civil," altered the caption to reflect that Petitioner was a "petitioner" rather than a "defendant," duly terminated the United States as a party to this action and added Ms. Donna Zickefoose, the warden of Petitioner's current place of confinement, as Respondent, so the docket sheet in this matter would be in accord with the general mode employed in all § 2241 actions.

same.  See Ruggiano, 307 F.3d at 131-33.  Specifically, the "adjustment" that the sentencing court exclusively can award under § 5G1.3(c) is a sentence reduction designed to account for time spent in custody on a prior conviction.

To determine what type of "adjustment" the sentencing court intended to apply, "the appropriate starting point is to ascertain the meaning that we should ascribe to the sentencing court's directives."  Rios v. Wiley, 201 F.3d 257, 264 (3d Cir. 2000).  When the oral pronouncement of sentence and written sentence are in conflict, the oral sentence prevails.  See United States v. Chasmer, 952 F.2d 50, 52 (3d Cir. 1991).  However, when there is no conflict, "but rather only ambiguity in either or both [sentence pronouncements], we have recognized that the controlling oral sentence 'often [consists of] spontaneous remarks' that are 'addressed primarily to the case at hand and are unlikely to be a perfect or complete statement of the surrounding law.'"  Ruggiano, 307 F.3d at 133 (quoting Rios, 201 F.3d at 268).  Importantly, "in interpreting the oral statement, we have recognized that the context in which this statement is made is essential."  Id. at 134.

Hence, for the purposes of addressing Petitioner's challenges, this Court would have to first examine the oral statements made by Judge Sánchez during Petitioner's sentencing in McGowan-II and, if the Court detects: (a) no conflict between Judge Sánchez's oral statements and the judgment of conviction rendered by Judge Sánchez; but (b) an ambiguity in either one of these pronouncements, than this Court would have to examine the context of Judge Sánchez's oral statements to determine what prompted Judge Sánchez's oral comments and what was Judge Sánchez's intent when he sentenced Petitioner.  Consequently, although the written text

employed by Judge Sánchez in the McGowan-II judgment of conviction is important, it is not decisive.

The Court finds it prudent to give consideration to the allegations stated in Petitioner's original motion, which was executed pro se and, hence, warrants lenient construction by this Court. The Court, therefore, will direct the Clerk to docket Petitioner's original pro se motion in this action by designating it a "supplemental petition."

      B.      **Procedural Regime Governing Transfer of This Matter**

While this Court assumes and will retain jurisdiction over this action, the Court notes its concern with the circumstances of the transfer of Petitioner's Ruggiano-based challenges to this District. Petitioner was confined at FCI Schuylkill in Pennsylvania when he filed this petition challenging the execution of his sentence in the Eastern District of Pennsylvania. It is only a fortuity that he was later relocated to FCI Fort Dix in New Jersey.

Such a transfer of a petitioner's place of confinement cannot affect a district court's adjudicative jurisdiction over the legal matter itself. Case law makes clear that any BOP transfer of the litigant-inmate made *after* the inmate files his/her § 2241 petition is wholly irrelevant to the issue of the district court's in personam jurisdiction over the respondent. The district within which jurisdiction the litigant-inmate was located at the time (s)he filed his/her original § 2241 petition retains in personam jurisdiction over that § 2241 action even if the litigant was transferred after such original filing. See Padilla, 542 U.S. at 441.

Here, Petitioner filed his original petition on April 17, 2009, while being incarcerated at the FCI Schuykill, Pennsylvania. Therefore, in personam jurisdiction over the respondent was proper with the district having jurisdiction over the FCI Schuykill and remained with that district

regardless of Petitioner's recent transfer to Fort Dix, New Jersey.[4]  Moreover, this transfer did not affect the Easter District of Pennsylvania's adjudicative jurisdiction over Petitioner's substantive challenges.  It appears, however, that Petitioner's prior counsel as well as Respondents may have misstated the governing law when moving to transfer Petitioner's Ruggiano-based challenges to this District.[5]

As of now, Petitioner's challenges, articulated in his April 2009 pro se motion, are still pending, and – as the docket sheet in McGowan-II indicates – no answer on the merits was ever filed.  Moreover, in the event Petitioner is correct in his Ruggiano-based assertions, Petitioner's term of imprisonment should expire sometime during October 2012.

Being mindful of these circumstances, and in light of this Court's power to exercise adjudicative jurisdiction over Petitioner's challenges and the Court's territorial jurisdiction over Petitioner's current warden, this Court finds it prudent to retain jurisdiction instead of directing a retransfer of this action to the Eastern District or Middle District of Pennsylvania. See Accord Tatar v. Levi, 2010 U.S. Dist. LEXIS 98857, at *2 (D.N.J. Sept. 20, 2010).  Petitioner's Ruggiano-based challenges have been pending elsewhere for two and a half years and the interests of justice require a resolution on the merits.  This Court, therefore, will retain its

---

[4] In personam jurisdiction over the FCI Schuykill is with the United States District Court for the Middle District of Pennsylvania.  Therefore, the Eastern District of Pennsylvania could have directed transfer of Petitioner's Ruggiano-based challenges to the Middle District of Pennsylvania, on the in personam jurisdictional grounds.

[5] This development was unfortunate since it appears that Judge Sánchez would have been best positioned to adjudicate Petitioner's challenges because he had all records in McGowan-II proceedings at his disposal in the EDPA, and he is the person uniquely equipped to distill the correct meaning of his oral statements and their correlation with the text of the judgment of conviction he issued in McGowan-II.

jurisdiction over this matter and will direct Respondent to show cause why habeas relief should not be granted to Petitioner.

### III.   CONCLUSION

For the foregoing reasons, this Court will retain jurisdiction over this action and will not direct further transfer of this action.  Respondent will be directed to show cause as to why habeas relief should not be granted to Petitioner; no extension of time will be allowed to Respondent. Petitioner will be allowed an opportunity to file his traverse, if he so desires.  In addition, Petitioner will be directed to submit his filing fee of $5 or his duly executed in forma pauperis application in connection with commencement of this civil matter, since this aspect of Petitioner's proceedings was not addressed during the pendency of Petitioner's challenges before the United States District Court for the Eastern District of Pennsylvania.[6]  The Clerk will be directed to provide Petitioner with an in forma pauperis application form to assist Petitioner in that endeavor.

An appropriate Order accompanies this Opinion.

**October 4, 2011**　　　　　　　　　　　　　　　　　**Jerome B. Simandle**
Dated　　　　　　　　　　　　　　　　　　　　　　　Jerome B. Simandle
　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

---

[6] Since Petitioner's Ruggiano-based challenges were raised by means of Petitioner's pro se motion filed in his McGowan-II criminal proceedings, Judge Sánchez had no reason to be concerned with collecting a filing fee or in forma pauperis application from Petitioner: a motion filed in any proceeding, including a criminal proceeding, does not require any filing fee. See, e.g., United States v. Frady, 456 U.S. 152, 182 (1982).  The issue of filing fee arose upon – but was left unaddressed in – Mr. Raffaele's re-qualification of Petitioner's original motion into a § 2241 petition. Thus, the fee for seeking § 2241 relief now comes due.