**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| THOMAS MCGOWAN, | : | Hon. Jerome B. Simandle |
| Petitioner, | : | Civil Action No. 11-4696 (JBS) |
| v. | : |  |
| DONNA ZICKEFOOSE, | : | **MEMORANDUM OPINION** |
| Respondent. | : |  |

**Simandle**, Chief Judge:

This matter comes before the Court upon Respondent's filing of the answer [Docket Entries Nos. 6 and 7] to Petitioner's § 2241 application [Docket Entry No. 1], at it appears that:

1. The instant matter was initiated upon the Clerk's receipt of a transfer order from the United States District Court for the Eastern District of Pennsylvania ("EDPA"). See Docket Entry No. 1-3. The transfer order indicated that Petitioner, a federal inmate previously confined in a federal prison in the Eastern District of Pennsylvania and thereafter transferred to the FCI Fort Dix, Fort Dix, New Jersey, filed an application with the EDPA [see id.] challenging the decision by the Federal Bureau of Prisons ("BOP") to deny Petitioner's request for calculation of a certain sentence imposed by the EDPA as

running "retroactively" concurrent to Petitioner's other federal sentence, imposed by the EDPA prior to the sentence at issue.[1]  See Docket Entry No. 1-3.

2. This Court directed Respondent to answer the Petition [see Docket Entry No. 3], pointing out that the legal regime governing the claim raised in the Petition was as follows:

> Petitioner raised challenges based on the holding of Ruggiano v. Reish[, 307 F.3d 121 (3d Cir. 2002)].  In Ruggiano, the Court of Appeals explained that the sentencing court's authority under § 5G1.3(c) to "adjust" a sentence is distinct from the BOP's authority under 18 U.S.C. § 3585(b) to "credit" a sentence, even though the benefit to the defendant may be the same.  See Ruggiano, 307 F.3d at 131-33.  Specifically, the "adjustment" that the sentencing court exclusively can award under § 5G1.3(c) is a sentence reduction designed to account for time spent in custody on a prior conviction. [When the federal court sitting in habeas review faces the task of] determin[ing] what type of "adjustment" the sentencing court intended to apply, "the appropriate starting point is to ascertain the meaning that . . . should [be] ascribe[d] to the sentencing court's directives."  Rios v. Wiley, 201 F.3d 257, 264 (3d Cir. 2000). When the oral pronouncement of sentence and written sentence are in conflict, the oral sentence prevails.  See United States v. Chasmer, 952 F.2d 50, 52 (3d Cir. 1991). . . . [W]hen there is no conflict, "but rather only ambiguity in either or both [sentence pronouncements], the controlling oral sentence 'often [consists of] spontaneous remarks' that are 'addressed primarily to the case at hand and are unlikely to be a perfect or complete statement of the surrounding law.'"  Ruggiano, 307 F.3d at 133 (quoting Rios, 201 F.3d at 268).  Importantly, "in interpreting the oral statement, . . . the context in which this statement is made is essential."  Id. at 134.

Docket Entry No. 2, at 6-7.

3. Respondent duly complied with this Court's order to answer [see Docket Entries Nos. 6-7 (Respondent's answer)], and Petitioner waived his opportunity to traverse.  See Docket, generally (indicating that no traverse was received); see also Docket Entry No. 3, at 2 (the

---

[1] See infra, this Memorandum Opinion, note 8, for a procedural summary of Petitioner's application filed with the EDPA.

Court's order informing Petitioner of his opportunity to traverse). The answer is exceedingly detailed [see Docket Entry Nos. 6] and, being duly served upon Petitioner [see Docket Entry No. 6-4 (reproducing certificate of service)], sets forth both the factual predicate underlying this matter and Respondent's legal position with meticulousness allowing this Court to dispense with recital of the same, since the Court writes solely for the parties.[2] Therefore, it shall suffice to state only that: (a) Petitioner, by then already a convicted felon, was arrested by the Commonwealth of Pennsylvania ("Commonwealth") on August 5, 2003, and charged with a panoply of state penal offenses; (b) although Petitioner made bond on these state charges, he was arrested by federal law enforcement authorities on January 30, 2004, for possession of firearm by a convicted felon; (c) while, on March 19, 2004, the Commonwealth entered nolle prosequi with regard to Petitioner's state charges, the EDPA convicted and sentenced Petitioner, on July 26, 2004, on the basis of his possession of firearm charge, and Petitioner's 57-month federal sentence ensuing from that conviction (hereinafter "first EDPA" conviction) began to run;[3] and (d)

---

[2] Also, that this petition falls within the scope of § 2241 mandate, the propriety of this Court's jurisdiction over this matter ans other threshold aspects do not appear in dispute. Therefore, a recital of these basic points appears facially superfluous for the purposes of the narrow inquiry at bar.

[3] Petitioner had a multitude of prior convictions in the Commonwealth. See Docket Entry No. 7-1, at 20-22. While this Court cannot establish it with absolute certainty, it appears that Petitioner had no federal convictions prior to his "first EDPA" conviction. See id. Yet, the Court stresses that its uses the phrase "first EDPA" conviction solely for the ease of discussion of the case at bar, and the Court's resort to this phrase shall not be construed as a factual finding that Petitioner had no EDPA or other federal convictions prior to his "first EDPA" conviction.

      another federal indictment, based on a series of controlled substance offences,[4] which were loosely related to Petitioner's possession of firearm offense, was filed with the EDPA on November 17, 2004, and eventually produced, apparently upon Petitioner's guilty plea, the conviction underlying Petitioner's next EDPA sentence (hereinafter "second EDPA" sentence), which calculation is disputed in the instant matter. See Docket Entries Nos. 6, 6-1, 6-2 and 7 (setting forth the same in much greater detail and replicating the relevant underlying record).

4.     The parties are not in dispute that Petitioner's second EDPA sentence was a term of 120 months ordered to run concurrently with Petitioner's first, i.e., 57-month EDPA sentence imposed on the grounds of Petitioner's possession of firearm. The issue in dispute is limited to whether the judge imposing Petitioner's second EDPA sentence ordered it to run: (a) "prospectively" concurrent with Petitioner's first EDPA sentence, i.e., by adjusting Petitioner's second EDPA sentence so it would run concurrent to Petitioner's first EDPA sentence from the point when the second EDPA sentence was imposed; or (b) "retroactively" concurrent, i.e., by adjusting Petitioner's second EDPA sentence so it would be deemed triggered on the date when Petitioner's first EDPA sentence was triggered. Addressing this narrow inquiry, Respondent relies on: (a) the fact that the sentencing court expressly acknowledged that it had authority, pursuant to U.S.S.G. 5G1.3, to adjust, in some way, Petitioner's second EDPA sentence; and, especially, on (b) the relevant exchange that took place between the sentencing judge, Petitioner and

---

[4] It appears that Petitioner was a member of so-called "2nd Gang," that operated on the Second Street of Allentown, Pennsylvania, and his controlled substance conviction at issue resulted from a prosecution of thirteen members of this gang. See Docket Entry No. 7-1, at 6.

Petitioner's counsel during Petitioner's sentencing hearing (conducted with regard to Petitioner's second EDPA sentence):

| | |
|---|---|
| Petitioner's counsel: | Your Honor, I'd just – a point of clarification, if I may. [There is a relevant provision in the sentencing] guidelines . . . , and the Probation office cites that provision, it says that: ["]In a situation where the defendant is already serving a sentence on a related case, the Court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment, if the Court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons["]. What I'm trying to understand, Your Honor, is whether [Petitioner's second EDPA] sentence is . . . intended to encompass [Petitioner's entire first EDPA sentence] or whether [Your Honor] intends to impose a concurrent sentence of a hundred and twenty months that will make [Petitioner's] total sentence . . . greater than that [i.e., whether Your Honor wishes to impose your sentence to run "prospectively" concurrent, starting from this point on]? |
| The judge: | . . . [T]he only thing I'm doing here is, . . . I'm recognizing that the sentence [in Petitioner's first EDPA case] is related to this offense[,] and I'm directing that it [would] run concurrent with that one. |
| Petitioner's counsel: | So, a hundred – |
| The judge: | . . . [A]nd that's all what I'm . . . doing. So, any questions? |
| . . . | |
| Petitioner: | I have a question. |
| The judge: | . . . [D]o you have a question? |
| Petitioner: | That means everything is ran together? |
| The judge: | I'm giving you a hundred and twenty months [sentence with regard to the second EDPA conviction] before me. And I'm directing that because the [first EDPA] case that you have . . . is related to this offense, [so] this sentence run concurrent to the extent that you'd be given credit |

|  |  |
|---|---|
|  | for that time towards this sentence. . . . That's all . . . I'm doing. |
| Petitioner: | Okay. |

Docket Entry No. 6, at 6-7 (quoting Docket Entry No. 6-3, at 47-49).

5. In light of the foregoing, Respondent asserts that there is no basis for reading "retroactive" concurrence into the sentence imposed upon Petitioner in connection with his second EDPA conviction,[5] since the totality of statements made by the sentencing judge suggests that the concurrence intended was a "prospective" one. The Court finds Respondent's position well warranted.

6. Having its attention expressly drawn to the issue of "prospective" vs. "retroactive" concurrence by Petitioner's counsel, the sentencing court clarified that its actions were limited to "directing that [Petitioner's second EDPA] sentence would run concurrent with" the sentence imposed in Petitioner's first EDPA case. Docket Entry No. 6-3, at 47-49. While, admittedly, the sentencing court's statement, "[the second EDPA] sentence [would] run concurrent to the extent that you'd be given credit for that time towards this

---

[5] Respondent's answer addresses a panoply of related issues which do not appear in dispute. For instance, Respondent asserts (and this Court agrees) that the sentencing judge's reference to "U.S.S.G. § 5K1.3C" must have been a mere slip of tongue, and the sentencing court necessarily meant to refer to U.S.S.G. § 5G1.3, since it was addressing the issue of consecutive or concurrent sentences. Analogously, Respondent dedicated a lot of effort to the issues of how federal sentences are calculated and what the BOP's power to grant credit is limited to [see Docket Entry No. 6, at 9-13], and this Court agrees with Respondent's position to that effect, accord Setser v. United States, 132 S. Ct. 1463 (2012) (providing an elaboration on these issues), while noting that these aspects do not appear disputed by Petitioner. Finally, the Court agrees with Respondent [see Docket Entry No. 6, at 17-19] that, in the event the sentencing court erred in its understanding of its § 5G1.3 power and sentenced Petitioner wrongly, Petitioner's challenge to his second EDPA sentence, as entered, cannot be raised in a § 2241 action, because 28 U.S.C. § 2255 is not an inadequate/ineffective vehicle for raising such claim.

sentence," [id. at 48] is not of crystal clear,[6] leaving the reader to wonder about the meaning of the word "that" in the phrase "for *that* time," the controlling oral statements by the sentencing judge appear to be: (a) the phrase "to the extent" utilized in the directive that the second EDPA sentence should be concurrent to the first EDPA sentence only "to the *extent*"; (b) the word "only" in the sentencing court's phrase "the *only* thing I'm doing here"; and (c) the word "all" utilized in the sentencing court's twice repeated clarification "that's *all* what I'm doing" and "[t]hat's all I'm doing."  Docket Entry No. 6-3, at 48 (emphasis supplied).   These three utterances supply the necessary context to the word "that" utilized in the phrase "for *that* time," since they indicate, with a sufficient degree of clarity, the sentencing court's intention to downward depart Petitioner's sentence "only" "to [a certain] extent," "that's all."  Since, under § 5G1.3(c), the maximum downward departure is equal to retroactive concurrence, this chain of utterances indicates the sentencing court's intent to grant Petitioner something "less" than such maximum downward departure, but still some concurrence nonetheless.  That,

---

[6]

The Guidelines cautions sentencing courts that, "[t]o avoid confusion with the Bureau of Prisons' . . . authority provided under 18 U.S.C. § 3585(b) to grant credit . . . the [Sentencing] Commission recommends that any downward departure under . . . application note [3(E) in § 5G1.3] be clearly stated . . . as a downward departure pursuant to § 5G1.3(c), rather than as a credit for time served." U.S.S.G. § 5G1.3 cmt. n.3(E); see also Ruggiano, 307 F.3d at 133 ("[W]e encourage sentencing courts in the future to avoid using the term 'credit' to refer to § 5G1.3 adjustments so as not to engender any unnecessary confusion").  In Ruggiano, we [expressly suggested] that sentencing courts should use the term "adjustment," rather than "credit" or "downward departure," in order to avoid confusion when applying Guidelines § 5G1.3.  [See Ruggiano,] 307 F.3d at 133.  However, Application Note 3(E) to Guidelines § 5G1.3, which came into effect after Ruggiano, indicates that the appropriate terminology is "downward departure."

United States v. Gaskins, 393 F. App'x 910, 914 and n. 2 (3d Cir. 2010).

necessarily, leaves only one option under § 5K1.3(c): the only concurrence that is less than "retroactive" concurrence is the "prospective" one.

7. Thus, if the Court were to focus on the totality and overall context of Petitioner's sentencing judge's utterances – as this Court must, under the guidance provided in Ruggiano, 307 F.3d at 133, and Rios, 201 F.3d at 268 – the case at bar presents circumstances readily distinguishable from, if not directly opposite to those addressed in Ruggiano. In Ruggiano, the defendant requested the application of § 5G1.3, and his sentencing court responded with a directive that the defendant would "receive credit for the amount of time that he *had* served," Ruggiano, 307 F.3d at 131 (emphasis supplied), expressly utilizing the past perfect construction of the verb "serve" to underscore that the defendant would be granted downward departure corresponding to his *prior* period of incarceration. In line with that oral past perfect construction, the written judgment entered in Ruggiano expressly stated, "Defendant [shall] receive credit for [the] time *served*," id. (emphasis supplied), again utilizing the past form of the verb "serve" to underscore downward departure corresponding to the defendant's *prior* imprisonment. Here, in contrast, not a single word uttered by Petitioner's sentencing judge evinced the intent to resort to retroactive concurrence, and the totality of oral utterances made by Petitioner's sentencing judge indicated the intent to downwardly depart Petitioner's 120-month second EDPA sentence by something *less* than retroactive concurrence.[7]

---

[7] Moreover, the Court of Appeals' decision in Ruggiano v. Reish was entered in 2002, see 307 F.3d 121, i.e., *before* enactment of U.S. Sentencing Guidelines Manual § 5G1.3 cmt. n.3(E) (2003) (hereinafter "note 3(E)"). Note 3(E) clarified that "subsection (c) d[id] not authorize an adjustment of the sentence for the instant offense for a period of imprisonment
(continued...)

Furthermore, in full accordance with Petitioner's sentencing judge's oral statements – and in striking contrast with the circumstances presented in Ruggiano – Petitioner's written judgment of conviction contained *no* wording indicative of the sentencing judge's intent to resort to retroactive concurrence.[8]  See Docket Entry No. 6-2.

---

[7](...continued)
already served on the undischarged term of imprisonment. [Only] in an extraordinary case involving an undischarged term of imprisonment under subsection (c), it may be appropriate for the court to downwardly depart [by ordering "retroactive" concurrence]."  Id.  Hence, it is only prior to the enactment of application note 3(E), the Court of Appeals held the position that "credit for time served on a pre-existing sentence [was] allowed under § 5G1.3(c)" without the sentencing court's analysis of whether the case presents extraordinary circumstances envisioned by note 3(E).  Ruggiano, 307 F.3d at 130.  Since the policy statements and commentary contained in the Guidelines are binding on the federal courts, see Ruggiano, 307 F.3d at 128 n.4 (citing Rios, 201 F.3d at 260 n.3, there appears to be no question that that broad holding of Ruggiano was abrogated, to a small degree, by the subsequent clarification provided in note 3(E).  See United States v. Destio, 153 F. App'x 888, 894 n.6 (3d Cir. 2005) (acknowledging the same).  Since: (a) the record of Petitioner's sentencing hearing is marked by stark absence of his sentencing judge's analysis of whether Petitioner's case was extraordinary; (b) Petitioner's second EDPA sentence was rendered on December 11, 2006, that is, three years after enactment of note 3(E); and (c) this Court presumes that Petitioner's sentencing judge was familiar with note 3(E), the fact that the sentencing court omitted making any statement that Petitioner's case was "extraordinary" necessarily militates toward the conclusion that the Petitioner's sentencing judge never entertained the possibility that Petitioner's second EDPA sentence might be suitable for "retroactive" concurrence.  Accord Docket Entry No. 6-3, at 48 (replicating the sentencing judge's statement, "I think that's all . . . the authority that I have [here] under 5G1.3C").

[8]  The procedural history of this matter, while it was pending before the EDPA, seems to add additional support to conclusion that no retroactive concurrence was intended.

> On April 17, 2009, being still incarcerated at the FCI Schuykill, [Pennsylvania,] Petitioner filed a pro se motion in his [second EDPA] action; that motion was addressed to [Petitioner's sentencing judge and] asserted that the . . . BOP [wrongly] calculated his [second EDPA] sentence . . . as "prospectively concurrent."  Petitioner, [therefore, expressly] asked [his sentencing judge] to clarify that Petitioner's [second EDPA] sentence was imposed to run "retroactively concurrent" with his [first EDPA] sentence . . . . [The sentencing judge, however, did not issue the requested clarification.  Rather, more than two years later, that is, o]n May 3, 2011, [the sentencing judge] issued an order: (a)
> (continued...)

8.  Therefore, this Court finds that the BOP correctly distilled the intent of Petitioner's sentencing court when it read Petitioner's second EDPA sentence as imposed to run "prospectively" concurrent to his first EDPA sentence.

9.  Accordingly, this Court concludes that Petitioner is not entitled to habeas relief in the instant matter, and his Petition will be denied.  An appropriate Order accompanies this Memorandum Opinion.

          s/ Jerome B. Simandle
          JEROME B. SIMANDLE
          Chief Judge,
          United Stats District Court

Dated: **April 30, 2012**

---

[8](...continued) directing appointment of a federal public defender to represent Petitioner for the purposes of litigating Petitioner's [concurrence] challenges; and (b) [directing] that appointed public defender to file an amended motion [for clarification of Petitioner's second EDPA judgment]. . . . On July 5, 2011, [the appointed public defender] filed [that] amended motion [but re-characterized it into a] "Petition Pursuant to 28 U.S.C. § 2241 . . . ." . . . Also, on the same day (i.e., on July 5, 2011), [the public defender] filed a motion to transfer Petitioner's [so re-characterized] challenges to [this District since, during these two years while Petitioner's motion was pending before his sentencing judge, Petitioner was moved from FCI Schuykill to FCI Fort Dix]. On July 11, 2011, [the sentencing court, agreeing with the public defender's position that Petitioner's application was a § 2241petition rather than a motion for clarification of judgment,] issued an order directing transfer of Petitioner's . . . challenges to this District.

Docket Entry No. 2, at 3-6 (citations to docket entries omitted).